GEORGE W. WALKER & another *vs.* J. B. MOORS.

Suffolk. March 12. — 13, 1877. ENDICOTT, J., absent.
April 4. — May 4, 1877. AMES & ENDICOTT, JJ. absent.

If a bill of exceptions is not filed with the clerk nor presented to the judge, within the time specified in the Gen. Sts. c. 115, § 7, the judge may afterwards allow the exceptions, if he is satisfied of their conformity with the truth, and the adverse party consents to such allowance.

On the issue whether a certain person's reputation for pecuniary credit was good, the
evidence of a member of a firm, who testified that it was not good with his firm,
nor, so far as he knew, in the city where they were, and, on cross-examination,
"that he never heard his reputation called in question except by members of his
own firm," is hearsay and inadmissible.

CONTRACT upon an account annexed for goods sold and deliv-
ered.    At the trial in the Superior Court, before *Gardner*, J.,
the jury returned a verdict for the plaintiffs, and the defendant
tendered a bill of exceptions, the material parts of which were
as follows :

The defendant offered evidence tending to show that he did
not order the goods, but that the contract was made by George
W. Meserve with the plaintiffs, who did business in Boston.

The plaintiffs contended that Meserve was of such pecuniary
credit at the time of the sale that they would not have sold the
goods to him, and, for the purpose of showing that Meserve's
credit was not good at that time, offered as a witness one Pond,
who testified that he was a member of a firm in Boston in the
same kind of business as the plaintiffs, and was acquainted with
Meserve.    In reply to the question, "Did you know what his
reputation for credit was?" he answered, under the objection of
the defendant, "With us, it was not good;" and in answer to
the question, "In the trade in Boston, as far as you know, what
was his reputation?" he answered, "It was not good."    On
cross-examination, the witness said that he never heard Me-
serve's reputation for credit called in question except by mem-
bers of his own firm.

The defendant requested the judge to rule that the fact, that
the witness Pond testified that he never heard Meserve's credit
questioned by other firms in the trade, rendered him an incompe-
tent witness as to the general financial standing of the witness
Meserve.    The judge declined so to rule ; but instructed the jury
that they must take the testimony as given upon the stand, and
consider it ; that the evidence as to Meserve's pecuniary credit
was to be considered by them only upon the point as to whether
the sale was made by the plaintiffs to Meserve or the defendant ;
that they must be satisfied from all the evidence that Meserve
was a man whose credit was bad, that he had no financial credit
in the community, and that his reputation as to credit was bad

and reputation is what his neighbors say of him, what is generally talked of concerning his credit.

The defendant, being aggrieved by the above rulings and refusals to rule, and the admissions and rejection of testimony, excepted to the same, and prayed that his bill of exceptions might be allowed.

On this bill of exceptions the judge wrote and signed the following certificate, dated June 27, 1876: " The verdict in this case was returned into court, April 12, 1876. On June 22, 1876, and before the term had closed, the defendant presented to me the above bill of exceptions, the same not having been filed, with the following indorsement thereon : ' This may be filed as of proper date. Cyrus Cobb, Attorney for Plaintiffs.' No application has ever been made to me to extend the time for filing this bill, and none has been granted. I have examined the above bill of exceptions and find them conformable to the truth. If, by the statutes and the thirty-sixth rule of the Superior Court, I am empowered, upon the above statement of facts, which I submit to the judgment of the Supreme Judicial Court, to allow the above bill, I do hereby allow the same, and for the reasons above set forth I order that the same be filed."

The court ordered the question, whether this court had jurisdiction of the exceptions, to be first argued.

*H. W. Paine & J. M. Baker*, for the defendant.

*N. Morse & C. Cobb*, for the plaintiffs.

GRAY, C. J.  The court, upon consideration of the question presented by the judge's certificate upon the bill of exceptions, is of opinion that the object of the provision of the Gen. Sts. *c.* 115, § 7, which requires the party alleging exceptions to file them with the clerk, give notice thereof to the adverse party, and present them to the judge, within the time ascertained or allowed as prescribed by the statute, is to protect the adverse party and the presiding judge from being compelled to examine the truth of exceptions of which they have no notice until after that time has expired ; but not to prevent the judge from afterwards allowing the exceptions, if he is satisfied of their conformity with the truth, and sees fit so to do, and the adverse party consents to such allowance.

*Exceptions to stand for argument.*

The case was then argued upon the bill of exceptions.

*N. Morse & C. Cobb*, for the plaintiffs, were first called upon.

*H. W. Paine & J. M. Baker*, for the defendant, were not called upon.

LORD, J.   If we assume that the general reputation in the mercantile community that the financial credit of Meserve was bad is a proper fact to be given in evidence, (and upon this we give no opinion,) the question presented for our decision is, Is the testimony of Pond, as reported in the bill of exceptions, competent evidence in support of such fact?   This inquiry leads to another, Was his testimony the statement of a fact, or was it simply what is ordinarily designated as hearsay evidence?   The distinction between reputation and hearsay evidence is sometimes a difficult practical question, and is not always kept clearly in mind in the introduction of testimony upon a trial.

General reputation is a fact.   The mere declaration of one or many is hearsay.   It does not require a multitude of witnesses to prove the fact that there is a general reputation upon a particular subject.   The question is a simple one of fact, Is there a general reputation?   Has the subject been so much discussed and considered that there is in the public mind a uniform and concurrent sentiment which can be stated as a fact?   By the public mind, of course, is not meant the mind of the whole public, but of that portion of the public which is cognizant of and interested in the matter of inquiry.

An examination of the evidence as given at the trial shows with entire certainty that the witness was not testifying to a fact which the general public mind had accepted as such, but that he was testifying to the opinions of individuals, as he had heard those individual opinions expressed.   The first inquiry was, "Did you know what his reputation for credit was?"   The answer was, "With us, it was not good."   The response was even more limited than the inquiry, which in itself was too narrow, and was wholly immaterial.   The next inquiry was, "In the trade in Boston, as far as you know, what was his reputation?"   The answer was, "It was not good."   If nothing further than that had appeared, it might have been doubtful whether the witness had any knowledge upon the subject; and perhaps, if neither party had made further inquiry, the testimony might properly

have been left to the jury for their consideration. But the opposite party went further, and on cross-examination the witness said that he "never heard Meserve's reputation for credit called in question except by members of his own firm." There does not appear to have been any other testimony upon the subject. In this state of the evidence, the defendant requested the court to rule "that the fact, that the witness Pond testified that he never heard Meserve's credit questioned by other firms in the trade, rendered him an incompetent witness as to the general financial standing of the witness Meserve." Without deciding that this request was couched in strictly accurate terms, it did call upon the court to state the true rule of law upon the subject, and that such testimony had no tendency to establish the fact required to be proved. We do not mean to say that, if there had been other evidence in the case, tending to prove the fact that there was a general reputation in relation to his credit as bad, the language of the learned judge would have been necessarily inaccurate; but that, there being no other evidence in the case upon the subject except that given by Pond, it was the duty of the court to say that there was no evidence proper to be con sidered upon that issue.                    *Exceptions sustained.*