COMMONWEALTH *vs.* SALATHIEL EDMONDS.

Suffolk.    February 5, 1974. — June 21, 1974.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Homicide.   Self-Defence.   Evidence*, Of threat, Of reputation.

In a murder trial where the defendant claims to have acted in self-defence, evidence of threats of violence made by the victim against the defendant, even though uncommunicated to the defendant, is admissible as a declaration of purpose to show that the person hurt or killed was actually attempting to carry out his threat. [500]

Where verdicts were set aside on other grounds, this court did consider the question whether the defendant was prejudiced by the court's exclusion of admissible evidence, much of which was subsequently admitted albeit through a different source than the defendant's offer. [500-501]

Whether or not he chooses to testify, a defendant claiming to have acted
in self-defence is entitled to present testimony of witnesses other than
himself to prove that the victim of an assault or homicide had the
reputation of being a violent and quarrelsome person and that the
defendant knew of that reputation. [501-502]

In a murder trial where self-defence was an issue, the fact that a person
told the defendant of the victim's reputation was not hearsay, where
that person was the witness giving the testimony. [503]

Though testimony as to a person's reputation in the community is the
repeating of hearsay, it is admissible as an exception to the hearsay
rule. [503-504]

It could not be said that the testimony of a witness as to a person's
reputation was properly excluded as an exercise of the trial judge's
discretionary right to require a broader basis of foundation for
reputation testimony than merely an affirmative answer to the
question "Do you know the . . . [victim's] reputation?", where the
trial judge did not require further evidence, but rejected the testi-
mony as irrelevant. [504]

While setting aside verdicts of guilty of assault and battery and murder,
this court noted that the trial judge's instruction may not have
amounted to a fair, adequate and accurate instruction on self-defence
as regards the "prudent person" standard and its relationship to the
apprehension of imminent danger element of self-defence. [504-505]

A trial judge is not bound to instruct the jury in the exact language of a
requested instruction. [505-506]

INDICTMENTS found and returned in the Superior Court
on December 8, 1972.

The cases were tried before *Roy*, J.

*William P. Homans, Jr.*, for the defendant.

*Paul V. Buckley*, Assistant District Attorney (*Frances
M. Burns*, Assistant District Attorney, with him) for the
Commonwealth.

QUIRICO, J. On December 8, 1972, the grand jury
returned two indictments against the defendant, one
charging that on October 10, 1972, he committed an assault
and battery on one Chris Vernon Scott by means of a
revolver, and the other charging that on October 13, 1972,
he committed the crime of murder in the first degree, the
victim being Anthony Santos. After a trial of the two
indictments together under G. L. c. 278, §§ 33A-33G, the
jury found the defendant guilty on the first indictment and
found him guilty on so much of the second indictment as

charged him with murder in the second degree. The case is before us on the defendant's appeal from his convictions on both indictments. The principal questions presented by the appeal relate to the defendant's claim that the acts charged against him were committed in self-defence.

We summarize certain facts which do not appear to be in dispute. From about June or July, 1972, through October 13, 1972, the defendant was the operator of a combination restaurant and recreation center at a building known as the Boston Black Action Committee (BBAC) in Dorchester. His son Salathiel Edmonds, Jr. (herein called Junior) was a high school student and he also worked at the BBAC, performing services assigned to him by the defendant.

About 10 P.M. on October 10, 1972, Scott and Junior had an argument at the BBAC during which Scott struck Junior. Upon learning this the defendant struck Scott. A number of other young men, including Santos, were in the place at the time. Junior ran to the rear of the restaurant to a place where the defendant kept a .32 caliber Smith and Wesson revolver. He took the revolver and gave it to the defendant who shot and struck Scott as a result of which Scott was hospitalized. The defendant gave the revolver to the police the following day.

About 6 P.M. on October 13, 1972, Santos entered the BBAC along with several other persons. Shortly thereafter the defendant took a revolver from under a counter and fired two shots at Santos, striking him in the abdomen with the second shot. Santos died later that evening as a result of the gunshot wound. The revolver used in this shooting was not the same one used in the shooting of Scott, but it was of the same caliber and model.

The defendant does not deny that he shot both Scott and Santos. After each of the shootings he admitted the fact to the police and again while testifying at his trial. Four eyewitnesses testified they saw the defendant shoot Scott, and three that they saw him shoot Santos. The principal, if not the sole, issue at the trial of the two indictments was whether, in the circumstances then existing, the defendant was entitled as matter of self-defence to use the kind and

degree of force which he did against Scott and Santos. The evidence of those circumstances, while conflicting in some respects, was sufficient to require the judge to submit the question of self-defence to the jury, and the judge did so. The case is before us on the defendant's assignments of error in the judge's exclusion of certain evidence which the defendant offered on the issue of self-defence and in the judge's charge to the jury on that subject.

## A. EVIDENTIARY QUESTIONS.

There was considerable evidence introduced at the trial which indicated that the BBAC was patronized by certain persons whose language included frequent threats of violence and whose conduct included frequent resort to violence, sometimes with the use or display of weapons. There was evidence which, if believed, warranted a finding of both threats and acts of violence by the victims Scott and Santos, and also by other persons acting in concert with them, toward the defendant and Junior for a period of several months leading up to the two shootings in question and in particular on the dates of the shootings.

1. *Evidence of Threats and Acts of Violence by Victims.* The defendant contends that the judge wrongfully excluded evidence tending to show (a) that the two victims, Scott and Santos, and certain other persons acting in concert with them, threatened and committed acts of violence against him and Junior prior to the time each victim was shot, and (b) that as to those threats and acts which were not made or committed in his presence he was informed of them by Junior and other persons.

The admissibility of such evidence is governed by the following rules stated in *Commonwealth* v. *Rubin*, 318 Mass. 587, 588-590 (1945): "Where self defence is invoked by a defendant, threats of violence made against him by the person hurt or killed by him are generally admissible, when known to the defendant before the act, as evidence of his apprehension for his own safety, and the reasonableness of

that apprehension. . . . Similarly the character of the person hurt or killed as a powerful, dangerous, quarrelsome or violent person, if known to the defendant, may be admitted for the same purpose. . . . For this purpose knowledge by the defendant at the time of the act of the threats by. or the character of the person hurt or killed, is essential. . . . Threats of violence against a defendant, made by the person hurt or killed by him, whether communicated or not to the defendant before he acted, may be received in evidence upon another ground. It is true that 'the fact that a person's habits or character are such that he would be apt to do an act is not competent evidence that he did the act.'. . . But threats stand differently. A threat is a declaration of purpose, and like other declarations of purpose is evidence that an occurrence that might be in execution of that purpose was in fact in execution thereof. . . . Under this rule, when a defendant contends that he acted in self defence, and there is evidence of some act on the part of the person hurt or killed by the defendant that might constitute such an attack upon the defendant as would justify his use of force, evidence of a threat of violence against the defendant, made by the person hurt or killed, even though the threat was unknown to the defendant, is admissible to show that the person hurt or killed was actually attempting to carry out his threat."[1]

It seems clear that on several occasions when evidence was offered showing threats by either Scott or Santos to commit acts of violence against the defendant, which was admissible under one or several parts of the rule stated above, the judge excluded it. However, it seems equally clear that ultimately, before the case went to the jury, substantially all of this same evidence was admitted — either on further examination of the same witness or through other witnesses. Much of the previously excluded

---

[1] See generally on evidence of self-defence: Wigmore, Evidence (3d ed.) §§ 110-111, ·246-248 (1940); Jones, Evidence (6th ed.) §§ 4.17, 4.40 (1972); Torcia, Wharton's Criminal Evidence (13th ed.) §§ 224, 236 (1972); McCormick, Evidence (2d ed.) §§ 193, 249 (1972).

evidence was placed before the jury by the reading of a statement which the defendant had made to the police. The statement indicated clearly that most if not all of the threats or acts of violence which had not occurred in the defendant's presence had in fact been communicated to him by his son or other persons. Because we are setting aside the verdicts and ordering a new trial of these indictments for the reasons discussed next below, we need not consider or decide the question whether the defendant suffered any prejudice by reason of the initial exclusion of the evidence ultimately admitted.

2. *Evidence of Character of Victims.* As we noted above, evidence of "the character of the person hurt or killed as a powerful, dangerous, quarrelsome or violent person, if known to the defendant, may be admitted" as evidence of the defendant's "apprehension for his own safety, and the reasonableness of that apprehension." *Commonwealth* v. *Rubin*, 318 Mass. 587, 588 (1945). Accord, *Commonwealth* v. *Tircinski*, 189 Mass. 257, 258 (1905); *Commonwealth* v. *Connolly*, 356 Mass. 617, 625-626 (1970).

Counsel for the defendant asked Junior in direct examination: "And do you know what Tony Santos' reputation for violence was before October 13, 1972?" On objection by the prosecutor the judge excluded the question. Counsel for the defendant then offered to prove that the witness would "answer that he had a reputation — that is, Santos had a reputation, based on his talks — that is, this witness' talks with numerous persons for beating up people, for being violent, for being quarrelsome. The defendant was aware of this, from his talks with this witness and through his own independent — ." The judge thereupon said: "The fact that the victim might have had a reputation, that would be a subject of proof, but whether or not this man knows about it is of no materiality." Substantially the same procedure was repeated with respect to the victim Scott, and with the same result, and the defendant duly saved his rights to the exclusion of the evidence. The proffered evidence was not

·again offered or admitted through the same or any other witness. .

It is inferable from the record that the sole reason the judge excluded the evidence that the victims had reputations "for beating up people, for being violent [and] for being quarrelsome," and that "[t]he defendant was aware of this," was that it was being offered through a witness other than the defendant. Defence counsel understood that to be the sole reason. We hold that the exclusion on this ground was error.

When self-defence is claimed by a defendant, there is no requirement limiting the proof of the victim's violent or quarrelsome reputation to the testimony of the defendant alone. The same is true of proof that the defendant knew of such reputation. If the law imposed such a limitation, it would seriously undermine the defendant's right not to take the stand at his own trial. We reject any thought that the benefit of the doctrine of self-defence, to the extent that it depends on the defendant's knowledge of the reputation of the victim for being quarrelsome, is available only to a defendant who does not avail himself of that constitutional right. We hold that regardless of whether the defendant in such a case takes the stand as a witness, he is entitled to present the testimony of witnesses other than himself to prove (a) that the victim of the alleged assault or homicide had the reputation of being a violent or quarrelsome person, and (b) that the defendant knew of that reputation. See annotation, 1 A. L. R. 3d 571, 577-582, 596-601 (1965).

The Commonwealth argues in its brief, however, that the judge's exclusion of the proffered evidence of the reputations of the victims could be sustained on three grounds other than the one on which the judge appears to have relied. Apart from the obvious fact that it would be unfair now to ask the defendant to meet grounds not considered by the judge, the three now urged are without merit.

. The first ground is that at the time the reputation evidence was offered, "[t]he defendant . . . had not testified, so there was no indication that he had the essential knowledge of the victims' reputation for vio-

lence." This ignores the fact that the defendant's offer of proof included evidence that the witness who said he knew the victims' reputations also said he had informed the defendant of them. "Evidence must go in by piecemeal, and evidence having a tendency to prove a proposition is not inadmissible simply because it does not wholly prove the proposition. It is enough if in connection with other evidence it helps a little." *Commonwealth* v. *Tucker*, 189 Mass. 457, 467 (1905).

The second ground is "[t]he fact that . . . [Junior] may have told his father [the defendant] about the victims' reputations is clearly hearsay." Clearly the fact that Junior said something to the defendant is not hearsay when Junior is the witness giving the testimony. The real question at issue is whether the giving of testimony about a person's reputation is the stating of a fact or the repeating of hearsay and if the latter, whether it should be excluded.

Although an early case states that testimony concerning general reputation is evidence of fact, see *Walker* v. *Moors*, 122 Mass. 501, 504 (1877), we think it is better treated as hearsay. We agree with Professor Wigmore that what is really sought to be proved is the character of the victims, and that: "[S]ince reputation is looked to merely as evidence of the character reputed, . . . the reputation is *hearsay testimony*; for it is the expression of an opinion on the part of the community, used testimonially, but uttered out of Court and not under cross-examination." Wigmore, Evidence (3d ed.) § 1609, p. 478 (1940).[2] Nevertheless, the law has traditionally permitted testimony of reputation to be admitted as an exception to the rule against hearsay. The reasons given are the necessity for use of such testimony as a source of evidence of the victim's character, and its trustworthiness. Wigmore, Evidence, *supra,* §§ 63, 1580. McCormick, Evidence (2d ed.) § 193, p. 461, § 249, p. 595 (1972). Indeed, it seems obvious that the more

---

[2] In this section, Professor Wigmore directs specific criticism at our decision in *Walker* v. *Moors, supra,* for its statement that reputation is admissible as fact. See also Jones, Evidence (6th ed.) § 4.40 (1972); Torcia, Wharton's Criminal Evidence (13th ed.) § 236 (1972).

hearsay discussion there is about a person's reputation in the community, the more likely it becomes that testimony concerning such reputation will be trustworthy. We hold that the Commonwealth's argument that Junior's proffered testimony was excludable as hearsay is not valid.

The third ground raised by the Commonwealth is that the judge "also could properly have excluded the testimony offered through . . . [Junior] because he considered that an insufficient foundation had been laid." It is true that a judge is "permitted, in his discretion, to require a broader basis for reputation testimony than a mere affirmative answer to the question, 'Do you know the . . . [victims'] reputation[s]?' " *Commonwealth* v. *Belton*, 352 Mass. 263, 269 (1967). However, in this case the judge did not exercise his discretion to require more evidence of the basis for Junior's proffered testimony. He rejected it out of hand, indicating that Junior's knowledge of the victims' reputations was not relevant, nor was the fact that he communicated the reputations to the defendant. The defendant was not given an opportunity to develop any broader basis, if one was required.

Since we have held that the judge erred in excluding the reputation evidence offered by the defendant and because we believe this error could have been prejudicial to him, we hold that the verdicts shall be set aside and the case shall be remanded to the Superior Court for a new trial on the indictments.

## B. ADDITIONAL CONSIDERATIONS.

As there is to be a new trial, we treat briefly other points raised by the defendant which might arise therein.

1. *Apprehension of Imminent Danger.* In instructing the jury on the requirement that the defendant have reasonable grounds to believe he was in imminent danger of being killed or of sustaining grievous bodily harm before he could resort to shooting Scott and Santos, the judge

included the language which is quoted in the margin.[3] The defendant contends that this instruction erroneously inserted the standard of a "prudent person" into the legal definition of self-defence, and that the judge should have charged in the more frequently used language contained in *Monize* v. *Begaso*, 190 Mass. 87, 89 (1906) and *Commonwealth* v. *Houston*, 332 Mass. 687, 690 (1955).

If the instruction were limited to the language quoted in the margin, it might well have been erroneous. It should be noted that the judge also told the jury: "[Y]ou are to judge fairly the position of the defendant in his actions, having in mind that this whole matter of retreat, this whole matter of general contemplation of the situation is not to be regarded in the complete niceties of cold blood. A fair evaluation of the situation in respect of passion and fear may be indulged in by you." Even with the addition of this language, however, the judge's charge may not have amounted to a fair, adequate and accurate instruction on the subject. An instruction in the language of the *Monize* and *Houston* cases, *supra*, would be preferable; and if a judge wished to take a long step toward avoiding error in instructing a jury on self-defence, he should avail himself of the excellent discussion of the law on this subject which is contained in *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211-212 (1966).

2. *Failure to Give Requested Instruction.* The defendant contends that it was error for the judge to fail or refuse to give the following instruction requested by him: "Among the circumstances which you may consider in deciding upon the availability of self-defense are threats of violence to the defendant, if any, the number of persons confronting

---

[3] "The circumstances under which he acted cannot be subjective. He is bound by the standard of a reasonably prudent man under those circumstances. Would a reasonably prudent man under those circumstances believe that he was in imminent danger of grievous bodily harm or death? If a reasonably prudent man would not have concluded that under the circumstances which this defendant found himself in on October 13th, the defense of self-defense falls. He must not only have a reasonable belief, not being an aggressor, but he must have acted as a reasonably prudent person would, and he must have believed as would a reasonably prudent person would believe, that it was necessary to use deadly force to repel the attack, or the threatened attack."

the defendant, the basis upon the circumstances observed by him for the defendant to believe that another was armed, and such other circumstances as may give rise to reasonable cause for the defendant to apprehend an attack upon him and serious bodily harm to himself."

The judge was not bound to instruct in the exact language of this request. *Commonwealth* v. *Lussier*, 333 Mass. 83, 93 (1955). *Commonwealth* v. *Devlin*, 335 Mass. 555, 569 (1957). The instructions of the judge to the jury were adequate on this subject, although not making specific reference to the particular facts stated in the defendant's request. There was no error.

3. *Miscellaneous Alleged Errors.* Several additional alleged errors argued by the defendant are not considered because it is unlikely that the questions will arise in any retrial of these indictments.

*Judgments reversed.*
*Verdicts set aside.*