F. W. STOCK AND SONS *vs.* JOSEPH P. DELLAPENNA.
JOSEPH P. DELLAPENNA *vs.* F. W. STOCK AND SONS.

Suffolk.     March 3, 1914. — May 20, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Witness,* Impeachment.   *Evidence,* Of reputation.

In an action by a flour dealer against a baker, where there is an irreconcilable conflict of testimony and the plaintiff seeks to impeach the credibility of the defendant as a witness, a witness for the plaintiff should not be allowed to testify that the defendant's reputation for truth and veracity was "poor amongst the flour trade," and another witness, who has no other information about the defendant's reputation than what he gained from people connected with and "all in the flour business," should not be permitted to testify that the defendant's general reputation for truth and veracity was "very poor."

CONTRACT by F. W. Stock and Sons, a corporation organized under the laws of Minnesota and engaged in business as a dealer in flour, against Joseph P. Dellapenna, a baker in Lynn, for the

---

* *Jenney,* J.

refusal of the defendant to accept and pay for two carloads of flour ordered from and shipped by the plaintiff, the writ being dated July 11, 1911; and

TORT by the defendant in the first case against the plaintiff in that case for alleged unlawful arrest and malicious prosecution, the writ being dated December 28, 1911.

In the Superior Court the cases were tried together before *Keating,* J. It was stated in the bill of exceptions that "the testimony of the two parties was diametrically opposed." The evidence, so far as it is material for understanding the exceptions, is described in the opinion.

The trial resulted in a verdict for the corporation and against Dellapenna in each of the cases, in the action of contract a verdict being returned for the plaintiff in the sum of $300, and in the action of tort a verdict being returned for the defendant. During the trial the judge admitted, against the objection and subject to the exception of the defendant Dellapenna, the testimony of several persons as to the reputation of Dellapenna for veracity. Dellapenna objected to all of these witnesses on the ground that they did not qualify as having sufficient knowledge of his reputation to testify to it, and also excepted to their testimony as inadmissible, and asked that it should be struck out.

. One Leviston, a flour salesman, called as a witness by the plaintiff in the first case, testified that he knew the reputation of Dellapenna for truth and veracity among people in the flour trade, that he had talked with more than two or three flour dealers about it and that his knowledge of Dellapenna's reputation was derived from these two or three flour dealers and his own experience. Later the witness testified that he knew Dellapenna's general reputation for truth and veracity and that his knowledge of it came to him because he was connected with the flour trade as a seller of flour. The judge ruled that he would admit the evidence, the weight of it being for the jury. The witness then was asked what Dellapenna's general reputation was for truth and veracity, and answered, "It is poor."

One Pritchard, another flour salesman, who also was called as a witness by the plaintiff in the first case, testified that he knew Dellapenna's reputation for truth and veracity only "among the flour trade . . . only through several flour dealers, that is all —

salesmen." To the question, "What is his general reputation for truth and veracity?" he answered, "Poor amongst the flour trade."

One Hermann, who had been a travelling salesman in the flour business, testified that he knew Dellapenna from reputation although he never had had any personal dealings with him. He testified that his general reputation for truth and veracity was "very poor," and said, as to his sources of information, that he knew nothing more than what he had "gained from other sources, from people connected, that is all in the flour business."

One Rosenberg, who also had been engaged in the flour business, testified that Dellapenna's reputation in the community for truth and veracity was bad, and that he had heard about him outside the flour trade from Italians who lived in Lynn.

Dellapenna excepted to the admission of all the evidence described above.

In the first action the jury returned a verdict for the plaintiff against Dellapenna in the sum of $300. In the second action the jury returned a verdict for the defendant corporation. Dellapenna alleged exceptions in both cases.

*G. Newhall,* for Dellapenna.

*R. B. Skinner,* for the corporation.

BRALEY, J. The defendant Dellapenna, while conceding in the first action that he had bought but had refused to accept and pay for the flour, relied in defense upon an accord, satisfaction and release under seal executed after the action had been brought. The validity of the release depended upon whether it had been delivered in settlement by one F. W. Stock, whose authority to bind the plaintiff is not questioned. But, when the terms of the compromise were settled, only Stock and the defendant were present; and their testimony as to the negotiations is irreconcilable. If the statements of Stock were true, the jury could find that the release never had been delivered, and it was forcibly taken from him by the defendant, who also simultaneously seized and retained the money which had been paid over as the consideration of the settlement. The defendant Dellapenna's evidence, however, showed that no money passed, and Stock accepted the defendant's check for an amount which was small if compared with the plaintiff's demands, but which had been agreed upon, and there-

upon duplicate releases were executed and delivered. It is manifest that, if the jury found the release to be enforceable, not only was the plaintiff barred, but the defendant at the instigation of the plaintiff having been arrested and charged with larceny of the money and duly discharged, had the right to go to the jury in the second action in which he sought damages for malicious prosecution. *Connery* v. *Manning,* 163 Mass. 44. *Shattuck* v. *Simonds,* 191 Mass. 506.

The issue in both cases having been thus narrowed to a question of veracity as to whom the jury would believe, evidence affecting the credibility of the defendant Dellapenna as a witness was admissible. But the examination of the witnesses called by the plaintiff in impeachment was restricted to their knowledge of the defendant's general reputation in the community for truth and veracity, and evidence of particular acts showing him to be untruthful were inadmissible. The reasons generally given are, that proof of separate instances of falsehood may have existed without impairing his general reputation for truthfulness, or that the impeached witness is not required to be prepared to meet particular acts of which he has had no notice, although he is presumed to be capable of supporting his general reputation, or that the attention of jurors will be distracted from the real issue to be tried by the introduction of collateral issues, which also would tend to prolong the trial unduly. *Eastman* v. *Boston Elevated Railway,* 200 Mass. 412, 413, and cases cited. *Commonwealth* v. *Lawler,* 12 Allen, 585. *Commonwealth* v. *Rogers,* 136 Mass. 158. *Dore* v. *Babcock,* 74 Conn. 425. *Fyre* v. *Bank of Illinois,* 11 Ill. 367. *Phillips* v. *Kingfield,* 19 Maine, 375. *Boon* v. *Weathered,* 23 Texas, 675. 1 Greenl. Ev. (15th ed.) § 461. It is what is said of the person under inquiry in the common speech of his neighbors and members of the community or territory of repute, from which his reputation for truth or falsehood arises, and not what the impeaching witness may have heard others say who numerically may be few and insignificant. Wigmore on Ev. § 692. It is said in *Wetherbee* v. *Norris,* 103 Mass. 565, that in this State no practice as a rule of law is established, but it is within the discretion of the presiding judge to require the preliminary question to ascertain whether the witness knows the general reputation for truth and veracity in the community where he lives of the

Mass.] TREASURER OF BOSTON v. AMERICAN SURETY CO. 507

person to be impeached before asking what that reputation is. But this practice, which elicits the fact whether the witness has any knowledge, yet does not inquire as to its extent, prevents the admission of incompetent testimony, and it was followed with the approval of this court in *Commonwealth* v. *Rogers,* 136 Mass. 158. See 40 Cyc. 2633–2635; *Fyre* v. *Bank of Illinois,* 11 Ill. 367, 379. The testimony given by Leviston and Rosenberg, who each said that he knew what the defendant's general reputation in the community was, showed the requisite qualifications upon the preliminary inquiry. To what extent the weight of their evidence had been affected by the cross-examination was for the jury under appropriate instructions. It cannot be said as matter of law that the testimony in chief was wholly incompetent. *Rundell* v. *La Fleur,* 6 Allen, 480.

But the evidence of Pritchard that the defendant's reputation was "poor amongst the flour trade," and of Hermann, who had no other information than what had been gained by inquiry from people connected with, and "all in the flour business," that the defendant's general reputation for truth and veracity was "very poor," should have been excluded for reasons sufficiently stated.

The general verdict in each case was adverse to the defendant, and, as this incompetent evidence was prejudicial, we have no means of knowing that it did not influence the jury to his harm.

*Exceptions sustained.*