COMMONWEALTH *v*. DAMIAN HEALEY.

No. 88-P-374.

Suffolk. January 10, 1989. — February 22, 1989.

Present: GREANEY, C.J., ARMSTRONG, & KASS, JJ.

*Rape. Indecent Assault and Battery. Evidence*, Prior consistent statement, Reputation, Relevancy and materiality.

In the circumstances of a trial of indictments alleging the sexual abuse of two children, a letter, written by one victim and addressed to the defendant, was properly admitted, with jury instructions, as a prior consistent statement to rebut the defense theory, developed on cross-examination, that the victim had fabricated her allegations under pressure from her social worker. [34-39]

At a criminal trial the judge properly excluded testimony of a defense witness concerning the victim's reputation in the community for truth and veracity, where no proper foundation for the admission of such evidence was established. [39-40]

Error, if any, in the exclusion of certain evidence at a criminal trial, was harmless, where other evidence on the point had been presented and the jury had been given a complete picture of the issue. [40]

INDICTMENTS found and returned in the Superior Court Department on May 6, 1986.

The cases were tried before *Guy Volterra*, J., and a motion for a new trial was heard by him.

*Patricia A. O'Neill*, Committee for Public Counsel Services, for the defendant.

*Laura Callahan Burnham*, Assistant District Attorney, for the Commonwealth.

GREANEY, C.J. A jury in the Superior Court found the defendant guilty of the sexual abuse of two sisters, whom we shall call Ann and Kim.[1] On appeal, the defendant argues that

[1] As to Ann, the jury found the defendant guilty on four charges of rape and four charges of indecent assault and battery. As to Kim, the jury found

the trial judge erred in three evidentiary rulings. We find no reversible error and affirm the convictions.

There was evidence in the Commonwealth's case of the following facts. The defendant moved into the victims' household in South Boston sometime after July, 1978. He lived there with the victims, their mother, Susan, and their brothers, James and Joey. The children called the defendant "Daddy" and "Dad." The defendant acted as the disciplinarian in the family. At times, he was physically abusive to Susan and to the children. There were some discussions about the defendant's adoption of the children. While the family lived in South Boston, the defendant began touching Ann, then age eleven or twelve, in her "private places."

In January, 1983, the family moved to Chelsea. The defendant's sexual contacts with Ann progressed from touchings to engaging in sexual intercourse with her two or three times a week. He had also sexually abused Kim from the time she was nine years old. The defendant would touch Kim's "thing" and her "private places," "down below," and he would put "something inside of [her]."

The family eventually came to the attention of Ann McDermott, a social worker from the Department of Social Services (D.S.S.), in connection with allegations of possible physical and sexual abuse of the children by the defendant. McDermott visited the family about twice a month for three months to investigate these claims. The children, particularly Ann, emphatically denied that the defendant had engaged in either physical or sexual abuse. The conversations between McDermott and family members took place either with the defendant present or in a setting where he could monitor what was being said. McDermott could not obtain visits alone with the children's mother. McDermott eventually concluded that the allegations of physical abuse could be substantiated but that the allegations of sexual abuse could not. In November, 1983, the

the defendant guilty of one charge of rape and two charges of indecent assault and battery.

family decided that they did not want D.S.S. visits or services anymore, and further contact with McDermott ceased.

In May, 1984, McDermott visited the family again, at the defendant's request. By this time the children's mother had left the home, and the defendant expressed concern over his ability to provide for the children. In August, 1984, the family was broken up. The children were placed in foster homes. In March of 1984, the defendant had commenced a relationship with another woman, who was also named Susan. He continued to see Ann and Kim and their brothers, although the sexual touchings did not continue.

Around Christmastime, 1984, Ann wrote the defendant the undated letter set forth in the margin.[2] The letter was hidden in a notebook in the closet of the room Ann shared with Kim. In February, 1985, Kim was cleaning the closet. While doing so, Kim discovered Ann's letter, read it, and later showed it to two foster sisters and their foster mother. The foster mother gave the letter to Ann's mother. The letter was then given to McDermott. Subsequently, McDermott met with the foster mother and Kim about the letter. Kim told McDermott that she believed that some "hanky-panky" had been going on between her sister and the defendant. Kim also admitted that she had been sexually abused by the defendant for some time.

McDermott next met with Ann and told her that "[w]e found something that is pretty serious here, and it's time that we started talking about what's been going on." In response, Ann

[2] "Dear Daddy

"Hi, How are you doing. I'm doing just fine I hope you are having fun with Sue then you enjoyed with me. Sue also makes you happy when you have sex with her, I tried to make you happy when we had sex together. You are probably happy because you can come inside Sue and make her have your baby, but I sure do miss and love you very much. I also know you love Sue more than you love me but that's alright. I will not call you anymore because you don't want me to call you. I will just write to you from now on. If you want to call me or visit me that is just fine. Try to spend most of you time with your girlfriend. We shouldn't see much of you anyway.

"P.S. Remember I love you!!! And will always miss you and love you!!!!!
"Love You!!
"[Ann]"

disclosed, for the first time, that she had been sexually abused by the defendant, and she described the details and the scope of the abuse. In her testimony at trial, Ann stated that all her denials to McDermott of sexual abuse had been lies, expressed out of fear of the defendant. Investigation by the police followed and led to the charges on which the defendant was tried.

The defendant presented the testimony of four witnesses at trial. (He did not testify.) The witnesses indicated that there had been a close relationship between the defendant and all of the children and that the defendant continued to have social contact with the children after he left the household and commenced a relationship with his new girlfriend. Neighbors of the family in Chelsea testified that the children appeared to be very fond of the defendant and called him "Daddy." They also indicated that he was the disciplinarian in the family. An occasion where Ann had been physically abusive to Kim was described. Finally, there was testimony that Kim had falsely told some people who had questioned her at school that the defendant had "hurt" her because she was "frightened" or "scared."

1. The first issue is the propriety of the admission in evidence of Ann's letter. (See note 2, *supra*.) The subject was initially raised by the defendant's motion in limine, which sought a pretrial ruling excluding the letter from evidence and prohibiting any mention of it by the prosecutor in her opening statement to the jury. After a hearing, the judge ruled that the letter was not admissible as a fresh complaint and that it did not seem to "fit any other pigeonhole of admissibility . . . ." The judge stated, however, that "in the event that through cross-examination, or by evidence produced during the defendant's case-in-chief, evidence is offered that . . . [Ann's] in-court testimony is a recent contrivance . . . it would be open to the Commonwealth to show that this particular document was a prior consistent statement . . . ."

The trial proceeded. Ann testified and was cross-examined to create the impression that she had fabricated the accusations. During redirect examination of Ann, the prosecutor moved to introduce the letter based on the impressions of Ann's credibility

left by defense counsel's cross-examination. After a further hearing, and in accordance with his pretrial comments, the judge admitted the letter as a prior consistent statement.[3] At the time of the letter's admission, and later in his final instructions, the judge carefully instructed the jury that the letter was to be considered for corroborative purposes only and not for the substantive truth of the statements contained therein. We concentrate on whether the letter was properly admitted as a prior consistent statement.[4]

The "general rule . . . is that a witness's prior consistent statement is inadmissible, even where a prior inconsistent statement of the witness has been admitted. *Commonwealth* v. *Tucker*, 189 Mass. 457, 479-485 (1905). *Commonwealth* v. *Jenkins*, 10 Gray 485, 488-489 (1858)." *Commonwealth* v. *Zukoski*, 370 Mass. 23, 26 (1976). "As an exception to this general rule, however, a witness's prior consistent statement is admissible where a claim is made that the witness's in-court statement is of recent contrivance or is the product of particular inducements or bias." *Id.* at 26-27, and cases cited. See also *Commonwealth* v. *Healy*, 393 Mass. 367, 384 (1984); *Commonwealth* v. *Andrews*, 403 Mass. 441, 454 (1988); *Commonwealth* v. *Horne*, 26 Mass. App. Ct. 996, 998 (1988); Liacos, Massachusetts Evidence 168-169 (5th ed. 1981). There is, however, a limitation to this exception. Before a witness's prior consistent statement can be admitted in evidence, it must

---

[3] There was some initial confusion about the basis under which the letter was being admitted. By the end of the hearing on the issue of its admissibility, however, it became clear that the judge had concluded that the foundation requirements for a prior consistent statement had been satisfied and that he was allowing the letter in evidence under that rule of evidence.

[4] The letter could have been considered under the state of mind exception to the hearsay rule. That exception allows the admission of extrajudicial statements to show the state of mind of the declarant if it is relevant to a material issue in the case. See *Commonwealth* v. *Borodine*, 371 Mass. 1, 7-9 (1976). The exception has been described as "narrow". *Commonwealth* v. *DelValle*, 351 Mass. 489, 493 (1966). The possible application of this exception to the hearsay rule, however, was not raised in the trial court and has not been argued on appeal. We think it appropriate to resolve the case on the basis stated for the admission of the letter in the trial court and submitted on appeal.

also appear that the statement was made before the witness possessed a possible motive to fabricate or before the inducements or bias which might have influenced the witness developed.[5] *Commonwealth* v. *Binienda*, 20 Mass. App. Ct. 756, 759 (1985), and cases cited.

The ultimate question is, essentially, the probative value of the evidence, that is, "whether the prior consistent statement has a logical tendency to meet and counter the suggestion that the witness has recently contrived [or been pressured into] his testimony for purposes of trial." *Commonwealth* v. *Darden*, 5 Mass. App. Ct. 522, 530 (1977). See *Hewitt* v. *Corey*, 150 Mass. 445 (1890). This determination is particularly suited to the trial court in the exercise of its discretion on evidentiary issues. The trial judge is "in a better position than an appellate court to evaluate the subtleties and nuances of the trial and . . . [the judge] consequently should not be reversed for admitting or excluding . . . testimony [of a prior consistent statement] except where it is clearly shown that [the] ruling is outside the proper boundaries of discretion." *Commonwealth* v. *Darden*, *supra* at 530. See *Commonwealth* v. *Zukoski,* 370 Mass. at 27; *Commonwealth* v. *Andrews*, 403 Mass. at 455; *Commonwealth* v. *Horne*, 26 Mass. App. Ct. at 998.

The judge in this case did not abuse his discretion. The lengthy cross-examination of Ann by defense counsel sought to establish a basis for arguing that she had fabricated her testimony. That impression was created by questioning which tended to show: (1) that Ann, prior to February, 1985, had repeatedly denied having been sexually abused by the defendant; (2) that Ann may have harbored a hostility toward the defendant because he had disciplined her, had never fulfilled his promise to adopt her and her siblings, and had entered into a relationship with another woman, a fact which may have contributed to the family's breakup; and (3) that Ann had made

---

[5] Thus, the limitation serves to exclude, as inherently untrustworthy, self-serving statements made by a witness after the witness has a reason to build up his position, knowing that repetitions of his claims may be helpful later to blunt the force of an accusation that he is fabricating his testimony or is expressing a bias.

up the accusations of sexual abuse under the constant pressure and influence of McDermott whom Ann viewed as a strong authority figure and whom Ann wanted to "help."

The pursuit of the last theory became the basis for the prosecutor's request that the letter be admitted as a prior consistent statement to rebut the defendant's insinuation that Ann's allegations had been manufactured in response to McDermott's constant inquiries about sexual abuse. On this point, defense counsel stated to the judge that, in light of his cross-examination of Ann, he would, in final argument, "tie together all of [Ann's] conversations with . . . McDermott, and the fact that [Ann] herself said that [McDermott] questioned her frequently about sexual abuse . . . prying and prying, and then finally [Ann] said it happened."[6] In view of this, we agree with the judge that the letter had a logical tendency to show that Ann's testimony in court was truthful and that it was not the product of pressure brought to bear on a youthful mind by a D.S.S. social worker.[7] We turn to the defendant's particular arguments for excluding the letter to determine whether they alter this conclusion.

First, we disagree with the defendant's argument that Ann's cross-examination involved only prior inconsistent statements, which alone will not justify a conclusion that a claim of recent

---

[6] Consistent with this predicted strategy, defense counsel forcefully pursued the theme in his final argument. At one point, he urged the jury to find that Ann had made the accusations out of a "desire to accommodate, to placate, to appease the social worker, who [was] the most significant person in their lives."

[7] Moreover, the judge could also take into account that the letter did not suggest that it was written to please or help McDermott. It was a personal and emotional communication, directed to the defendant, which was subsequently hidden in a notebook and placed in a closet. To conclude that the letter was the product only of improper motives is to assume an elaborate scheme on Ann's part (and perhaps also on the part of her sister and the social worker). "To impute [to them] such a design seems to us fantastic." *DiCarlo* v. *United States*, 6 F.2d 364, 366 (2d Cir. 1925). The considerations involved in the writing and hiding of the letter support its relevance as corroborative evidence and justified the judge's conclusion that the jury should be allowed to weigh the letter's value (under careful limiting instructions) against the conflicting arguments of counsel.

fabrication is implicit in the circumstances. See *Commonwealth* v. *Zukoski*, 370 Mass. at 27. Defense counsel's cross-examination of Ann went well beyond that type of impeachment; it sought to create the inference that Ann had succumbed to McDermott's insistence that the defendant had sexually abused her.

We also reject the defendant's argument that the letter was written after Ann had a motive to lie and was, therefore, within the limitation previously discussed. The defendant fixes the time that motive arose as roughly March of 1984, when the defendant established a relationship with another woman. The defendant contends that about that time Ann may have perceived the defendant's conduct as an abandonment of the family, which, the defendant reasons, left her hurt and angry because she had a "crush" on the defendant and wanted him to adopt her and her siblings. Based on this hypothesis, the defendant argues that any statements made by Ann subsequent to March, 1984, should have been ruled inadmissible because the statements were made after Ann had a motive to lie.

However, this hypothesis was not expressed by defense counsel to the judge in the hearing on the letter's admissibility. That hearing, as has been indicated, focused on the admissibility of the letter for the purpose of rebutting the inference created in the cross-examination of Ann that she was making up her claims in order to appease McDermott. On the state of the evidence before the jury, and the arguments the judge heard, he reasonably could have found that the letter was written before Ann had a motive to placate McDermott.[8]

---

[8] Moreover, even if the hypothesis of Ann's possible hurt and anger because of the defendant's perceived rejection of her had been raised at the hearing, the judge still would have had discretion to admit the letter. This is not a case where the date of a possible motive to fabricate can be fixed with relative certainty. See, e.g., *Commonwealth* v. *Zukoski*, 370 Mass. at 27 (motive to lie arose several days after defendant's arrest); *Commonwealth* v. *DiLego*, 387 Mass. 394, 395, 399 (1982) (motive arose shortly after witness's conviction); *Commonwealth* v. *Healy*, 393 Mass. 367, 384-385 (1984) (defendant's motive arose on day of the crime); *Commonwealth* v. *Kirby*, 18 Mass. App. Ct. 960, 961 (1984) (motive arose at time of defendant's postarrest statement to police); *Commonwealth* v. *Binienda*, 20 Mass.

The defendant further argues that the letter should have been excluded because its potential for prejudice exceeded its probative value. The competing interests involved in the search for trustworthy corroborative evidence in this context have been incisively stated by the Court of Appeals of Alaska in *Nitz* v. *State*, 720 P.2d 55, 60-61 (Alaska Ct. App. 1986).[9] We think

App. Ct. at 757, 759 (motive arose at the time alleged victim was involved in the incident). This case involves the activities of a particular family that occurred in different locations over a period of several years. In the circumstances disclosed here, Ann's ambivalent feelings toward the defendant at various stages of their lengthy relationship would not completely eliminate the judge's discretion to find that the letter was admissible as a prior consistent manner.

[9] The court framed the interests in the following manner:

"Thus, in [child abuse] cases, when the accused attacks the victim's testimony by an express or implied claim of faulty memory or fabrication, the victim's testimony is particularly vulnerable. Jurors are left with virtually no frame of reference for evaluating the credibility of the victim's story, which is bound to seem, at one and the same time, too serious to be accepted uncritically and too shocking to be rejected lightly. Reliance on personal experience and common sense will be of little value to most jurors: because the victim is a child and sexual abuse of children is a subject alien to the experience of most jurors, a realistic context for evaluating truthfulness will be difficult to find. Understandably, then, conscientious jurors may often find themselves in desperate need of reliable information to shed light on the veracity of the victim's testimony.

"It is this peculiar context, we believe, that imparts a unique sense of urgency to questions concerning the admissibility of prior consistent statements in cases of sexual assault upon children, for evidence of prior statements by the victim and the circumstances in which those statements were made can be of significant benefit to the jury. When actually relevant to refute a claim of fabrication or false memory, such evidence can, in our view, furnish the jury with a reliable and understandable backdrop against which to judge credibility.

"Admissibility of prior consistent statements is nevertheless governed by legal rules. Countervailing the strong policy of providing all relevant information to the jury is an equally strong policy of protecting the accused from unfair prejudice. Where a case hinges on the credibility of a single witness who is an inarticulate child, it can be fundamentally unfair to allow the bulk of the child's testimony to be presented through a parade of articulate, experienced, adult witnesses who impart to the child's statements the mature eloquence of adulthood and a sense of their own credibility, while adding nothing of substance but the force of repetition. It is to protect against such

that the letter had appropriate evidentiary value which the Commonwealth was entitled to have weighed by the jury. The letter was intrinsically trustworthy, see note 7, *supra*, and the judge, in the exercise of his discretion, was permitted to conclude that the letter's probative value outweighed its potential for unfair prejudice and that, with proper instructions, the jury's consideration of the letter could be effectively limited to the issue of corroboration.[10] We turn to the other two evidentiary rulings challenged by the defendant, which require only limited discussion.

2(a). There was no denial of the right to present a full defense by the judge's exclusion, after a voir dire, of testimony by a defense witness concerning Ann's reputation in the community for truth and veracity. We do not take issue with the defendant's assertion that when dealing with the reputation of a child the size of the "community" or "territory of repute," see *Commonwealth* v. *Gomes*, 11 Mass. App. Ct. 933 (1981), quoting from *F.W. Stock & Sons* v. *Dellapenna*, 217 Mass. 503, 506 (1914), from which the child's reputation arises may be more circumscribed than that of an adult. However, the testimony concerning the child's reputation must still emanate from an identifiable group which has had sufficient contact with the child to justify a statement about reputation. *Commonwealth* v. *Gomes, supra* at 933. The sources which underlie the testimony must be sufficiently numerous and general to ensure trustworthy testimony. Moreover, reputation evidence cannot be based on evidence of specific acts or privately held opinions. See *Commonwealth* v. *Belton*, 352 Mass. 263, 269, cert. denied, 389 U.S. 872 (1967); *Commonwealth* v. *LaPierre*, 10 Mass. App. Ct. 871 (1980); *Commonwealth* v. *Gomes, supra.*

The judge inquired into the sources of the witness's knowledge of Ann's reputation. See *F.W. Stock & Sons* v. *Dellapenna*,

---

abuses that the indiscriminate use of prior consistent statements has never been approved."

[10] We find no impropriety in the prosecutor's reference to the letter in her final argument. The reference was unlike that involved in *Commonwealth* v. *McDuffie*, 16 Mass. App. Ct. 1016, 1017-1018 (1985), and the jury were persistently and cogently instructed on the proper purpose for which the letter was to be considered.

217 Mass. at 506. The inquiry disclosed that the witness's sources of knowledge were insufficient, see *Commonwealth* v. *Moore*, 379 Mass. 106, 115 (1979), to be of serious relevance to the issue of truthfulness. See *Commonwealth* v. *Cancel*, 394 Mass. 567, 572 (1985). Additionally, the witness's testimony about his own personal experience concerning one incident involving Ann amounted to no more than the witness's own personal belief about Ann's character. The judge properly excluded the testimony because it lacked a sufficiently broad basis. On this issue, the defendant also has no ground to complain that he was not given an adequate opportunity to establish the necessary foundation. Cf. *Commonwealth* v. *Edmonds*, 365 Mass. 496, 504 (1974).

(b). The judge's exclusion as irrelevant evidence sought to be elicited from a defense witness, that the children had visited the defendant on Thanksgiving Day, 1984, appears to have been incorrect. The evidence had some logical tendency to rebut the inference that the children were afraid of the defendant. The evidence, however, differed in form, but not in substance, from other evidence in the case. See *Commonwealth* v. *Brown*, 26 Mass. App. Ct. 987 (1988). Ann herself testified that she and her brothers and sister visited the defendant on Thanksgiving Day, 1984, and Ann admitted she wanted to make the visit. There was also considerable other evidence tending to show that Ann and Kim had acted in ways arguably inconsistent with their claimed fear of the defendant. The jury, therefore, were presented with a complete picture of the victims' (particularly Ann's) conflicting attitude toward the defendant. Any error in this ruling was harmless.

The defendant has made no argument on appeal concerning the denial of his motion for a required finding of not guilty or for a new trial.

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*