COMMONWEALTH vs. MICHAEL ARTHUR.

No. 90-P-867.

Middlesex. March 19, 1991. - August 6, 1991.

Present: PERRETTA, PORADA, & LAURENCE, JJ.

*Indecent Assault and Battery. Evidence,* Reputation, Prior misconduct, Fresh complaint. *Practice, Criminal,* In camera inspection.

At the trial of indictments charging indecent assault and battery, it was error requiring reversal for the judge to exclude·evidence of the alleged victim's reputation among her schoolmates for untruthfulness. [179-181]

The court commented on issues relating to evidence of a defendant's prior misconduct, discovery of records of the Department of Social Services, and jury instructions on fresh complaint testimony, as might be relevant to the retrial of indictments charging indecent assault and battery. [181-183]

INDICTMENTS found and returned in the Superior Court Department on March 29, 1988.

The cases were tried before *James D. McDaniel, Jr.,* J.

*John H. LaChance* for the defendant.

*Rosemary D. Mellor,* Assistant District Attorney, for the Commonwealth.

LAURENCE, J. Michael Arthur presents four errors on appeal from his conviction on two of four indictments charging indecent assault and battery on his minor stepdaughter, Lisa.[1] We need deal at length with only one: the trial judge's exclusion of the defendant's proffered evidence of Lisa's bad reputation for truthfulness. We agree with Arthur that the judge committed prejudicial error in refusing to admit evidence of Lisa's reputation for lying and exaggerating from two of Lisa's female eighth grade classmates.

---

[1]We use a pseudonym.

The judge stated that the voir dire of the first witness[2] had not provided a sufficient foundation for reputation testimony because defense counsel had not complied with *Commonwealth* v. *Gomes*, 11 Mass. App. Ct. 933 (1981); had not established what community the witness was talking about; and had only produced specific instances of lying rather than general reputation evidence. These conclusions were incorrect. The judge properly cited *Gomes*, which summarizes the applicable principles,[3] but failed to recognize relevant distinctions between its facts and those here. There the witness's testimony (to impeach the victim in a sexual assault case) was based on "five other people" who "knew" the victim, but no foundation was laid as to the identity of those people or the context in which they knew the victim. *Id.* at 934. Accordingly, the defendant there failed to establish the necessary community or territory of repute.

In contrast, defense counsel here established, through the impeaching witness's voir dire: a discrete, identifiable community familiar with Lisa (her middle school eighth grade class of 150 students); a large group of persons in that community who had expressed views about Lisa's reputation for veracity (fifty or sixty classmates); and a witness who was a member of that community, had known Lisa for at least six years, and was in a position to know of that reputation. In *Gomes*, we recognized that such a school group might be an acceptable community from which reputation may be drawn.

---

[2]Defense counsel did not conduct a voir dire of the second witness because of the similarity of her proposed testimony.

[3]"A party's reputation is based on information from sources in the community who have come in contact with the person in question and who have the means of knowing what that person's general character is. 'It is what is said of the person under inquiry in the common speech of his neighbors and members of his community or territory of repute, from which his reputation for truth or falsehood arises, and not what the impeaching witness may have heard others say who numerically may be few and insignificant.' *F.W. Stock & Sons* v. *Dellapenna*, 217 Mass. 503, 506 (1914). A judge has discretion to exclude evidence of reputation if he determines that it is based on the opinions of too limited a group. *Commonwealth* v. *LaPierre*, 10 Mass. App. Ct. 871 (1980). 'It is only where the sources are sufficiently numerous and general that they are viewed as trustworthy.' *Ibid.*" *Commonwealth* v. *Gomes*, 11 Mass. App. Ct. at 933.

*Ibid.* See also G. L. c. 233, § 21A. The witness's voir dire testimony about Lisa's reputation among her schoolmates emanated "from an identifiable group which has had sufficient contact with the child to justify a statement about reputation," *Commonwealth* v. *Healey*, 27 Mass. App. Ct. 30, 39 (1989), and which provided sources for the witness's information that were "sufficiently numerous and general that they are viewed as trustworthy." *Commonwealth* v. *LaPierre*, 10 Mass. App. Ct. 871 (1980). The judge should not have excluded the reputation evidence in these circumstances.[4]

The judge also erred in ruling that the reputation witness based her testimony on specific instances of lying. It is unquestioned that evidence of specific events and personal opinions are not admissible to prove reputation, see *Commonwealth* v. *United Food Corp.*, 374 Mass. 765, 769 (1978), but those truisms are not applicable here. Defense counsel did not attempt to introduce evidence of specific instances of Lisa's lying. Only during the Commonwealth's cross-examination, and in response to explicit questions seeking examples of such lying, did the reputation witness mention any particular events. It was entirely proper for the cross-examiner to test the witness's knowledge of Lisa's reputation by asking for specifics regarding the events and opinions that formed the basis for that reputation. See *Commonwealth* v. *O'Brien*, 119 Mass. 342, 345-346 (1876); *Walker* v. *Moors*, 122 Mass. 501, 504-505 (1877); *Clark* v. *Eastern Mass. St. Ry.*, 254 Mass. 441, 443 (1926).

The judge, however, appeared to confuse this legitimate effort to discredit the impeaching witness with the foundational requirements for reputation testimony, which were sat-

---

[4]Compare *F.W. Stock & Sons* v. *Dellapenna*, 217 Mass. 503, 504-507 (1914) (opinions of "more than two or three" fellow flour dealers and unspecified fellow "Italians who lived in Lynn" adequate bases for reputation evidence). Contrast *Commonwealth* v. *Baxter*, 267 Mass. 591, 593 (1929) (five members of the residential community insufficient basis); *Commonwealth* v. *Belton*, 352 Mass. 263, 267-269, cert. denied, 389 U.S. 872 (1967) (three or four coworkers insufficient); *Commonwealth* v. *Dockham*, 405 Mass. 618, 631 (1989) (one person insufficient); *Commonwealth* v. *LaPierre*, 10 Mass. App. Ct. 871-872 (1980) (three coworkers insufficient); *Commonwealth* v. *Gomes*, *supra*.

isfied here. See *ibid.* and 3, 3A, 4, 5 and 7 Wigmore, Evidence §§ 691-692, 988, 1111, 1608-1619, 1985 (Chadbourn Rev. 1970, 1972, 1974, 1978).[5] The impeaching witness's direct voir dire examination established that among "practically all the kids that know her," at least fifty to sixty (and possibly as many as one hundred and fifty) individuals in her school class, Lisa had a reputation for lying and exaggeration. That was "impeaching evidence . . . of general reputation and not the private opinions of a few persons." *Commonwealth* v. *LaPierre*, 10 Mass. App. Ct. at 871. It would undermine the common law and statutory principles of admissibility to permit qualifying general reputation testimony to be excluded by cross-examination eliciting specifics as to the source or basis of the evidence. The thrust of such cross-examination goes to the weight of the testimony and is a matter for the jury under appropriate instructions. See *F.W. Stock & Sons* v. *Dellapenna*, 217 Mass. 503, 507 (1914).

Given the crucial role of Lisa's testimony to the prosecution, as the victim of and only eyewitness to the crimes charged, and the materiality of the impeaching reputation evidence, the exclusionary ruling was highly prejudicial, and we order a new trial on that ground alone.

We comment briefly on other issues raised by the appeal that may arise at any retrial.

1. *Evidence of prior bad acts.* We assume that Arthur's complaints about the judge's admission of testimony from Lisa, her mother, and a police detective, regarding prior interactions between Arthur and Lisa of a sexual nature that were not the subject of any indictment, will be appropriately addressed in pretrial proceedings. Evidence of such prior sexual contacts may be admissible to show inclination to commit the acts charged in the indictments if sufficiently similar and not too remote in time. See *Commonwealth* v. *King*, 387

---

[5]The judge's confusion, abetted by the prosecution, was understandable. The Supreme Judicial Court has acknowledged that the "distinction between general reputation and individual opinions often is difficult to determine . . . [a]nd the decisions in this Commonwealth in regard to qualifying witnesses to give reputation testimony are not easy to reconcile." *Commonwealth* v. *Belton*, 352 Mass. 263, 269, cert. denied, 389 U.S. 872 (1967).

Mass. 464, 469-470 (1982); *Commonwealth* v. *Calcagno, ante* 25, 26-27 (1991).

2. *Access to Department of Social Services (DSS) records.* As to the issue of Arthur's right to discovery of the G. L. c. 119, §§ 51A and 51B, records regarding the underlying notification and investigation of the alleged abuse,[6] *Commonwealth* v. *Stockhammer,* 409 Mass. 867, 884 (1991), indicates that Arthur's counsel may, under an appropriate protective order, be permitted to examine the DSS records to search for evidence of the complainant's bias, prejudice, motive to lie, or prior inconsistent statements; the admissibility of any such evidence is to be passed on by the trial judge at an in camera hearing.[7]

3. *Jury instructions on fresh complaint.* Arthur's contention that the judge's charge failed to inform the jury that they should not consider the prosecution's fresh complaint evidence unless they themselves found that it was in fact sufficiently fresh does not strike us as persuasive. The instructions, read as a whole, did convey to the jurors that they must make that preliminary determination, as the authorities require. See *Commonwealth* v. *Dockham,* 405 Mass. 618, 626-627 (1989); *Commonwealth* v. *Densten,* 23 Mass. App. Ct. 981, 982 (1987). Any fresh complaint instructions on retrial will presumably be clear and explicit as to this "ulti-

---

[6]In a pretrial motion, Arthur sought to discover the 51A and 51B reports for this case prepared by DSS. While the Commonwealth stated that it "will not oppose discovery of DSS records deemed relevant by [the] Judge," the court denied the motion and refused to inspect the records in camera, because Arthur never filed an affidavit setting forth specific need for the records. See Mass.R.Crim.P. 13(a)(2), 378 Mass. 875 (1979). The order of denial was without prejudice to Arthur's renewing the motion at trial upon the proper showing of need. He did not request the records during the trial.

[7]We note that under G. L. c. 112, § 135A(*f*), any information acquired pursuant to G. L. c. 119, § 51B, is exempt from the social worker privilege set out in G. L. c. 112, § 135. See *Commonwealth* v. *Jones,* 404 Mass. 339, 341 (1989); *Commonwealth* v. *O'Brien,* 27 Mass. App. Ct. 184, 187 (1989). But see G. L. c. 119, § 51E, inserted by St. 1973, c. 1076, § 5 (written 51A and 51B reports are confidential except by "order of a court of competent jurisdiction," among other reasons).

mate responsibility" of the jury. See *Commonwealth* v. *Montanino*, 409 Mass. 500, 510-511 (1991).

*Judgments reversed.*

*Verdicts set aside.*