COMMONWEALTH *vs.* SOUVANHEUNG PHACHANSIRI
(and six companion cases[1]).

No. 93-P-796.

Suffolk. October 13, 1994. - January 30, 1995.

Present: BROWN, GILLERMAN, & LAURENCE, JJ.

*Practice, Criminal*, Amendment of indictment or complaint, New trial, In-
structions to jury, Required finding. *Evidence*, Relevancy and material-
ity, State of mind, Judicial discretion, Unavailable witness, Reputation,
Joint enterprise. *Witness*, Unavailability. *Proximate Cause. Kidnap-
ping. Homicide. Joint Enterprise.*

Prior to the trial of three criminal defendants, the judge correctly allowed
the Commonwealth's motion to amend the kidnapping indictments by
striking the language tracking the third clause of G. L. c. 265, § 26,
leaving only language remaining that tracked the first clause of that
statute. [104-105]
At the trial of three defendants for murder and kidnapping, there was no
error in the judge's excluding as remote certain evidence tending to
show that the deceased was a violent person approximately nine years
before the trial; moreover the evidence was irrelevant to the issues in
dispute at trial. [105-107]
At a murder trial the judge correctly excluded the proffered hearsay state-
ment of an unavailable witness and correctly denied the defendants'
motion for a new trial based on the recent availability of that witness,
where the judge found, after a hearing, that the witness's testimony was
unreasonable, improbable, and cumulative, and where he concluded
there was no substantial risk that the jury would have reached a differ-
ent conclusion if they had heard the witness's testimony. [107-108]
At a murder trial the judge correctly declined to instruct the jury on inter-
vening cause with respect to the underlying felony where the evidence
did not warrant the requested instruction. [108-109]
At the trial of indictments the judge correctly excluded proffered evidence
of one defendant's reputation for truth and veracity, where the evidence
was remote and based on the opinion of too small and too limited a
group to be probative. [109]

---

[1]One of the companion cases is against Souvanheung Phachansiri; three
are against Souvanna Phachansiri; and two are against Khambor
Phouthongseng.

.

.

At the trial of a defendant for murder and kidnapping on a theory of joint
venture felony-murder the evidence was sufficient to establish the de-
fendant's knowing, wilful and active participation in a kidnapping exe-
cuted with conscious disregard of risk to human life that resulted in the
victim's death, and the judge correctly denied that defendant's motions
for required findings of not guilty. [110-111]

There was no merit to a defendant's contention that his voluntary intoxica-
tion necessarily precluded the jury from finding him guilty of kidnap-
ping and second degree felony-murder. [111]

The judge's instructions to the jury at the trial of indictments for second
degree felony-murder on a joint venture theory correctly stated the ele-
ments of the charges, including the element of intent. [111-112]


INDICTMENTS found and returned in the Superior Court
Department on February 28, 1990.

The cases were tried before *Daniel A. Ford*, J., and mo-
tions for a new trial were heard by him.

*Joseph J. Balliro* for Souvanheung Phachansiri.

*Francis L. Robinson* for Souvanna Phachansiri.

*Eugene Patrick McCann* for Khambor Phouthongseng.

*Jane Sullivan*, Assistant District Attorney, for the
Commonwealth.

GILLERMAN, J. On February 28, 1990, the defendants,
Souvanheung Phachansiri ("Souvanheung"), Souvanna
Phachansiri ("Souvanna"), and Khambor Phouthongseng
("Khambor"), were indicted for first degree murder (G. L.
c. 265, § 1) and kidnapping (G. L. c. 265, § 26).[2] Souvanna
was also indicted for assault and battery by means of a dan-
gerous weapon (a broken bottle) (G. L. c. 265, § 15A[b]),
assault and battery by means of a dangerous weapon (a re-
volver) (G. L. c. 265, § 15A[b]), and unlawful possession of
a firearm (G. L. c. 269, § 10). Pursuant to Mass.R.Crim.P.
4(d), 378 Mass. 849 (1979), the judge, on April 17, 1991,
granted the Commonwealth's motion to amend the indict-
ments charging the defendants with kidnapping.[3] The Com-

---

[2]A fourth defendant, Seng Phachansiri, the wife of Souvanna, was also
indicted for the same offenses. She was acquitted of the charges by the
jury.

[3]The allowance of the motion to amend the indictments is one ground of
appeal. It will be discussed in more detail, *infra.*

monwealth's motion to dismiss so much of the indictments as charged first degree murder was allowed, and the case proceeded to trial on the indictments charging second degree murder. On May 6, 1991, after a fifteen-day trial, a jury found the defendants guilty of second degree murder and kidnapping. Souvanna was also convicted of assault and battery by means of a dangerous weapon (a broken bottle). All three appeal their convictions.[4]

On June 10, 1991, Khambor's motion for a new trial and motion for a required finding of not guilty after return of the verdicts were denied. Khambor appeals these denials.

On October 1, 1993, defendants filed a joint motion for a new trial pursuant to Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979). After a hearing, the same judge who presided over the trial denied the motion. All three also appeal that adverse decision.

To put the issues in context, we outline the Commonwealth's case. From the Commonwealth's evidence, given principally by the victim's husband, Vixaysouk Thongchamleune ("Suki"), a jury could find as follows: On February 10, 1990, Suki, along with the defendants (two brothers and their friend, Khambor), the victim and her two children attended a birthday party in Plymouth. The victim had been married previously to Souvanheung. Her two children were the product of that marriage. When Suki and the victim arrived, the other guests were already there and they were playing games, drinking, and gambling. The victim was sitting next to her husband Suki. Souvanheung sat down on the other side of the victim, next to his mother, Souvanny Phachansiri ("Souvanny"). Suki overheard defendant Souvanheung tell his mother that he had $20,000 to $30,000 in the

---

[4]The three defendants initially filed a joint brief raising three issues. Then defendant Souvanna received permission from this court to file a subsequent brief which raises three additional issues, two of which apply to all three defendants and one which pertains only to defendant Souvanna. Finally, a third brief was filed by defendant Khambor alone, with two additional issues addressed specifically to his appeal. Khambor's third issue is essentially a reassertion of the previous two.

bank.[5] The victim then said to Souvanheung, "[W]hy don't you pay child support?" Souvanheung responded by punching the victim in the face. Suki told Souvanheung to stop, that "she's not your wife anymore." Suki and defendant Souvanheung began to fight. Then Souvanna "start[ed] jumping up . . . and pulled out the gun." Defendant Khambor was standing at the front door of the apartment at this time, about three feet from Suki. Suki then ran out of the house and down the street to a gas station to call the police. As Suki was running toward the gas station he saw Khambor and Souvanheung running after him; Khambor had a shovel in his hand.[6] Souvanheung was yelling at Suki to stop, that he was going to kill him. The police arrived quickly and drove back to the party with Suki. The police spoke to the three defendants and then broke up the party. The three defendants, with the brothers' mother Souvanny, and four children, left in a blue van. Shortly thereafter, Suki, the victim, and the victim's two children began their drive home to Lynn. The victim was driving. When they reached Revere, they stopped for gas. At the gas station, Suki noticed a blue van behind them. Suki got out of the car to pay for the gas. Souvanheung walked up to Suki and punched him in the face, and they fought. Souvanna joined in the fight. He pulled out a gun and threatened to shoot Suki. Then he stabbed Suki in the hand with a broken beer bottle. Khambor joined the fight and hit Suki in the head. After a few moments, Suki saw his wife, the victim, come out of the car. He saw Khambor pull the victim's hair. Khambor pulled the victim toward the blue van. Suki ran to the office to call the police. Then he saw the brothers and the victim near the blue van. Suki "freaked out." The blue van began to pull away. A witness saw the victim thrown into the van through

---

[5]This statement was offered "for the fact that it was what led to other harsh words."

[6]This testimony was corroborated by the attendant at the Sullivan Tire gas station. He testified that at about 9 P.M., "[t]his Asian guy came running into the station and asked me to call the cops." The attendant also saw "two guys walking down the sidewalk maybe half a block or so away and one was carrying a shovel."

the side door. Suki screamed for the van to stop; he ran up to it and struck the driver's side window with a "crook lock." The van sped away, and Suki ran out into the street. Once in the street, he saw a woman holding his wife, who was on the ground lying on her back. A witness testified that he was driving behind the van and saw a body thrown out of the van. When found, the victim's eyes were open, but she could not talk. Blood was on her nose and chest. Her clothes were in shambles and her brassiere had been cut off.

Dr. Stanton Kessler, an expert in forensic pathology, testified that the victim died as a result of manual strangulation and blunt trauma, either of which "are fatal injuries." The defense was that the victim entered the van voluntarily and either fell from or jumped from the van, fatally injuring herself thereby. We affirm the judgments.

1. *The judge correctly allowed the Commonwealth to amend the indictments charging kidnapping.* Prior to trial, pursuant to Mass.R.Crim.P. 4(d), 378 Mass. 849 (1979), the Commonwealth moved to amend the indictments charging each defendant with kidnapping in violation of G. L. c. 265, § 26. The Commonwealth sought to strike the language of specific intent in the third clause of the statute, and proceed with indictments tracking the first clause of the kidnapping statute, which does not require proof of specific intent. Over objection by defendants, the judge allowed the motion. In their amended form, the indictments tracked the language of the first clause of the statute: "[The defendant], on February 10, 1990, without lawful authority did forcibly and secretly confine and imprison [the victim] within the Commonwealth, against her will."[7] There was no error. See *Commonwealth* v.

---

[7]Prior to the amendments, the indictments read: "On February 10, 1990, *without lawful authority, did forcibly seize and confine and kidnap [the victim], with intent to cause her to be secretly confined and imprisoned in this Commonwealth against her will, and to be held to service against her will,* and without lawful authority, did forcibly and secretly confine and imprison the said [victim] within the said Commonwealth, against her will."

The underlined portion is what was struck. Minor grammatical changes were also made.

*Saylor*, 27 Mass. App. Ct. 117, 120-121 (1989), where the same issue is discussed and decided adversely to the defendant.

2. *There was no error in excluding evidence tending to show that the deceased was a violent person approximately nine years before trial.* During voir dire, the defendants elicited testimony from Betty Anderson ("Anderson"), the Director of Immigration and Resettlement for the Catholic Diocese in Davenport, Iowa, that in the early 1980's she was called to assist in family problems at the home shared by the victim and Souvanheung. The defendants were attempting to show that the victim was a violent, unpredictable person and, thus, not easily kidnapped. Anderson testified that "generally [family problems occurred] because [the victim] had lost her cool . . . [s]he was a person who wished to control things. She was . . . easily agitated. She would have temper tantrums. She would scream, she would occasionally throw things. Even when I was there she would act out considerably and very angrily. She was always very angry." When pressed on cross-examination, however, she stated she was at the house only one time "when [the victim] blew up quite profusely [*sic*] at her home," nine years prior to the date the victim died. Anderson could not pin down any specific times when she saw the victim "lose her temper," she just stated that she "lost her temper any number of times." Anderson was usually called "after the fact" to intervene in family disputes. She did say that "at least three other times," in 1982 or 1983, she saw the victim acting in an agitated, violent, tumultuous fashion in the presence of defendant Souvanheung.

The trial judge excluded the testimony. First, he concluded that the evidence was too remote in time to have any probative value. Here the alleged specific acts of violence about which Anderson testified occurred nine years earlier, and, thus, the issue of admissibility fell well within the judge's discretion. See *Commonwealth* v. *Fontes*, 396 Mass. 733, 736 (1986) (whether the alleged incident is too remote is a discretionary matter for the trial judge). See also *Common-*

*wealth* v. *Rodriquez*, 418 Mass. 1, 6 (1994) ("There can be no bright line: in one circumstance, an act two weeks earlier might be too remote, while in another, an act two years before may not. That is why the matter is left to the sound discretion of the judge").

Second, the judge reasoned that there was "no evidence which might tend to raise a reasonable doubt [as to whether] the defendants were acting in self-defense." Indeed, the defendants do not argue that they were acting in self-defense.[8] Rather, they argue that the victim entered the van "and appeared to exit or did exit of her own volition." Contrast *Commonwealth* v. *Fontes*, 396 Mass. 733, 735-736 (1986), in which the court held that "a defendant in a homicide case may introduce evidence of recent, specific instances of the victim's violent conduct, known to the defendant at the time of the homicide, to support his assertion that he acted *justifiably in reasonable apprehension of bodily harm*" (emphasis added). We conclude that there was no abuse of discretion in excluding Anderson's testimony.

With regard to *Commonwealth* v. *Papadinis*, 23 Mass. App. Ct. 570 (1987), *S.C.*, 402 Mass. 73 (1988), upon which the defendants rely, the judge ruled that "I really don't think that this evidence tends to explain the conduct of any of the defendants based upon what I have heard so far, at least as it did in [*Papadinis*]." In *Papadinis*, the defendant proffered his testimony concerning his state of mind which, if believed, would explain conduct otherwise incriminating. Here, all the defendants testified, and were not precluded from testifying about their own states of mind.

Further, the defendants in this case *denied* that they were engaged in any incriminating conduct, and Anderson's testimony about the victim's volatile behavior nine years earlier would hardly lend support to the defendants' claim of their alleged benign state of mind in the van as it sped away from the gasoline station following the brawl with Suki. As Anderson's testimony would, at best, be only marginally relevant to

---

[8]There was testimony that the victim was 5′1″ and weighed 110 pounds.

show the likelihood of her voluntarily jumping into and then out of the speeding van, its exclusion was certainly within the judge's discretion. See Liacos, *Massachusetts Evidence* § 4.1.2, at 113 (6th ed. 1994).

3. *The judge correctly excluded the statement of an unavailable witness and correctly denied the defendants' subsequent motion for a new trial based upon the recent availability of that same witness.* During the trial, the defendants, being unable to secure the presence of Souvanny, the mother of two of the defendants, Souvanheung and Souvanna,[9] sought to have a statement Souvanny made to police in February, 1990, admitted in her absence. Defendants argued that the statement "coincides with the defendants' versions of the events of that evening and every detail." The judge denied the motion; he pointed out that the statement simply was given in the course of a police interview. There was no error.[10] See *Commonwealth* v. *Taylor*, 32 Mass. App. Ct. 570, 574-575 (1992).

Souvanny became available nearly five months after the defendants were convicted, and the defendants moved for a new trial. Because the witness was unavailable for the trial, the defendants argued that the motion should be considered as one asserting newly discovered evidence. A hearing was held on the motion on November 18, 1991; Souvanny testified. The judge denied the motion. On appeal, the defendants argue that Souvanny's testimony was critical because "the witness corroborated the defendants' assertions that the deceased voluntarily entered and either jumped from the moving van or was ejected by the erratic movement of the van after she placed herself in close proximity to the side door."

In reviewing the denial of a motion for a new trial, we "examine the motion judge's conclusion only to determine whether there has been a significant error of law or abuse of

---

[9]Souvanny had returned to Laos and was ready to return to Massachusetts for the trial, but never received the airline ticket which had been mailed to her.

[10]As the Commonwealth noted in its brief, the defendants could have "preserved the mother's testimony by way of deposition and introduced it at trial."

discretion." *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). Further, we give "special deference" to the motion judge as he was also the trial judge. *Id.* In his memorandum of decision and order, the judge noted that Souvanny's testimony was merely cumulative — "simply a repetition of the testimony offered by the four defendants at trial." Citing *Commonwealth* v. *Grace, supra* at 305-306, the judge concluded that there was "no substantial risk that the jury would have reached a different conclusion if they had heard Souvanny's testimony." He found that her testimony was both unreasonable and improbable,[11] and would not have been a real factor in the jury's deliberations. There was no error. See *Commonwealth* v. *Moore*, 408 Mass. 117, 127 (1990); *Commonwealth* v. *Markham*, 10 Mass. App. Ct. 651, 654 (1980).

4. *The judge correctly declined to instruct the jury on intervening cause with respect to the underlying felony of kidnapping.* The defendants requested a jury instruction on intervening cause. The argument was that the death of the victim was not the probable consequence of the kidnapping. Rather, Suki's act of hitting the driver's side window with the crook lock "set in force a series of circumstances that resulted in the death of the victim." The "general rule is that the intervening conduct of a third party will relieve a defendant of culpability only if such an intervening response was not reasonably foreseeable." *Commonwealth* v. *Askew*, 404 Mass. 532, 534 (1989).

The judge refused to instruct on the intervening cause. He made the sensible observation that if you kidnap somebody's wife it is foreseeable that "the husband is going to try to rescue the wife, or at least do something to attempt to stop the kidnapping." Thus, the judge correctly instructed that the "Commonwealth must prove beyond a reasonable doubt that the homicide committed in the course of the felony or attempted felony was the natural and probable consequence

---

[11]The judge noted that Souvanny testified that the victim "jumped out of the van for no apparent reason and that no one said a word about it on the ride back to Lowell."

of the felonious act." See *Commonwealth* v. *Ortiz,* 408 Mass. 463, 467 (1990) (for the felony-murder rule to apply "the deaths must have been the natural and probable consequences of the felony"); *Commonwealth* v. *Catalina,* 407 Mass. 779, 791 (1990). More than that was not required. See *Commonwealth* v. *Askew, supra* at 535.

5. *The judge correctly excluded testimony of defendant Souvanna's reputation for truth and veracity.* Defendant Souvanna sought to introduce evidence, through Anderson, of his reputation for truthfulness and veracity five years earlier. After the voir dire of Anderson, the judge ruled the proffered evidence inadmissible, finding it too remote and based upon too small and too limited a group to be sufficiently probative. Souvanna argues that this ruling denied him a fair trial. There was no error. See *Commonwealth* v. *Moore,* 379 Mass. 106, 115 (1979) (seven-year hiatus between knowledge of witness's reputation for veracity and the date of the trial "too attenuated"). The trial judge in this case, exercising his considerable discretion, permissibly characterized the evidence as too remote. See Hughes, Evidence § 239, at 283 (1961)

Further, the judge properly determined that the testimony was based upon the opinion of too limited a group. See *Commonwealth* v. *LaPierre,* 10 Mass. App. Ct. 871 (1980) (three coworkers insufficient); *Commonwealth* v. *Gomes,* 11 Mass. App. Ct. 933 (1981) ("at least five" other people insufficient). *Commonwealth* v. *Arthur,* 31 Mass. App. Ct. 178 (1991), cited by the defendant does not help him. In *Arthur,* the reputation of the witness was based upon "at least fifty to sixty (and possibly as many as one hundred fifty) individuals." *Id.* at 181. Here, the relevant community consisted of about ten to twelve adults, and Anderson based her testimony upon her assumptions of what other people must have thought about the defendant.[12]

---

[12]We need not consider whether the defendant's character for truthfulness and veracity was sufficiently attacked to permit the proffered evidence of good character. See *Commonwealth* v. *Sheline,* 391 Mass. 279, 288 (1984).

6. *Denial of defendant Khambor's motions for required findings of not guilty as to kidnapping and second degree felony-murder were proper.* At the close of the Commonwealth's case, the close of all the evidence and after the jury verdict, Khambor moved for required findings of not guilty. The judge denied each motion. On appeal, Khambor argues that he was merely present at the scene of the crime. We affirm.

"The familiar test is whether, after viewing the evidence in the light most favorable to the Commonwealth, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Titus*, 32 Mass. App. Ct. 216, 219-220 (1992), quoting from *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). The Commonwealth proceeded under a theory of joint venture. To prove joint venture, the Commonwealth must prove "that the defendant was (1) present at the scene of the crime, (2) with knowledge that another intended to commit a crime, and (3) by agreement was willing and available to help the others if necessary." *Commonwealth* v. *Mahoney*, 405 Mass. 326, 327 (1989). The jury "may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense." *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988) (citation omitted). The defendant's knowledge or intent "is a matter of fact," *id.* at 487, properly left to the jury's determination.

As to the kidnapping, the Commonwealth produced evidence that Khambor was at the scene of the crime, that he helped the brothers fight with Suki, and that he grabbed the victim's hair, struggled with her, and pulled her toward the van. Then, the two brothers and Khambor, acting in unison, grabbed her and threw her into the van "like she was nothing," according to a witness at the scene. With all three men in the van, the van door was shut and the vehicle sped away. This was sufficient to establish Khambor's knowing, wilful and active participation in the kidnapping.

There was sufficient evidence to establish that the victim's death occurred during the course of the kidnapping, and that the kidnapping was executed with a conscious disregard of the risk to human life. See *Commonwealth  v. Ortiz*, 408 Mass. 463, 466 (1990). There was evidence of a violent struggle within the van after it left the gasoline station. The victim's unconscious body was found in the street just a short distance from the gas station. A witness described her as limp and bleeding around her neck and shoulders. There were stab wounds and numerous other bruises. Her slacks had been pulled down; her shirt was open; her hair "was a mess." There was an abundance of evidence from which the jury could reasonably conclude that during the course of the kidnapping, and as part of one continuous transaction, a deliberate and brutal homicide had occurred. In addition, the evidence was sufficient for the jury to find that the kidnapping had been committed with a conscious disregard for the risk to human life, and that the victim's death was the natural and probable consequence of the kidnapping. We are satisfied that the denial of Khambor's motion for a required finding regarding the kidnapping and second degree and felony-murder verdicts reveals no error. See *Commonwealth* v. *Ortiz, supra* at 466-467.

Khambor argues that his voluntary intoxication necessarily precludes the jury from finding him guilty of kidnapping and second degree felony-murder. It is enough to say, after reviewing the evidence and the judge's charge, that there is no merit to the argument.

7. *The judge gave the correct jury instructions on the intent required for second degree felony-murder on a joint venture theory.* Finally, Khambor argues that the judge's refusal to give an instruction that the jury must find the defendant specifically intended to commit the crime of kidnapping in order to sustain the second degree felony-murder conviction was in error. There was no error. The judge care-

fully instructed the jury with regard to each element of the charges against the defendant.

*Judgments affirmed.*
*Orders denying motions for*
*a new trial affirmed.*